AO 106 (Rev. 01/09)  Application for a Search Warrant

SEALED

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

SEP 2 6 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| 219 Frye Town Lane | ) |
| Saltville, VA | ) |
|  | ) |

Case No.  1:13MJ00289

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Western____ District of ____Virginia____ *(identify the person or describe property to be searched and give its location)*: 219 Frye Town Lane, Saltville, VA (to include the residence, curtilage, outbuildings, stuctures, campers, persons present, and vehicles present).  The residence is described as a brown and white singlewide trailer with an attached front porch.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  **See Attachment A**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ____21____ U.S.C. § ____841(a)(1)____ , and the application is based on these facts:  **See Attachment B**
and 846/841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/26/13

_____
*Judge's signature*

City and state:  Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

ATTACHMENT A

1. Red phosphorus/iodine method methamphetamine laboratory precursors, chemicals, and equipment (and related original packaging) including the following:  red phosphorus, iodine, pseudoephedrine, sodium hydroxide (e.g. Red Devil Lye), methyl alcohol/ethanol (e.g. Heet – fuel line antifreeze), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel), acetone, rubbing alcohol, hydrogen peroxide, muriatic acid, sulfuric acid, table salt, aluminum foil, distilled water,  glass mason jars, plastic bottles/food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, electric hot plates/electric skillets, frying pans, razor blades, digital scales, PH test strips or electronic PH testers, funnels, and stirring utensils.

2. Unidentified powders (processed/semi-processed precursors, chemicals).

3. Glass jars and plastic bottles/storage containers filled with unidentified liquids or sludges (processed/semi-processed precursors and other unidentified mixtures related to the manufacturing of methamphetamine)

4. Devices used to communicate with methamphetamine  manufacturing co-conspirators including cellular telephones, pagers, and two-way radios;  electronic equipment used for counter-surveillance to include scanners, anti-bugging devices, and video surveillance cameras..

5. Firearms, including but not limited to handguns, rifles, and shotguns that are commonly used by individuals to protect clandestine methamphetamine manufacturing operations and controlled substances.

6. Books, receipts, ledgers, notes, and videos pertaining to the illicit manufacturing of methamphetamine and pertaining to the purchasing and transporting of methamphetamine precursors, chemicals, and equipment.

7. Messages/letters, telephone numbers, and addresses relating to the illicit manufacturing of methamphetamine and the purchasing and transporting of methamphetamine precursors, chemicals, and equipment.  These messages/letters, telephone numbers, and addresses may be written on  personal calendars, personal address and /or telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

8. Photographs and videos depicting persons involved with/engaged in the manufacturing/use of methamphetamine and/or the purchasing, preparing, and storing of methamphetamine laboratory precursors, chemicals, and equipment.

ATTACHMENT A (Continued)

9.   Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles.  Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs (including digital), keys, receipts, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

10.  Items listed in Paragraphs 6 through 9 may be stored in digital media.  Therefore, digital media (including but not limited to computers/computer hard drives, floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular telephones, digital cameras, iPODs, iPADs, etc.) are to be seized and examined for the items listed in Paragraphs 6 through 9.

ATTACHMENT B

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 219 Frye Town Lane, Saltville, VA.  This affiant, after obtaining and reviewing information and participating in a criminal investigation, believes there is evidence of manufacturing methamphetamine and conspiracy to manufacture methamphetamine at  219 Frye Town Lane, Saltville,VA in violation of 21 USC 841(a)(1) and 846/841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (22) years.  During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors.   I am a graduate of both the DEA's Clandestine Laboratory Investigation/Safety Certification Program and the DEA's Clandestine Laboratory Site Safety Officer School.   I have participated in the execution of more than (300) narcotics related search warrants and the seizure and dismantling of more than (200) clandestine methamphetamine laboratories.   I have testified as an expert on multiple occasions in Federal Court and State Court regarding the clandestine manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my personal participation and information provided to me by other law enforcement officers.

5. The manufacturing of methamphetamine (a Schedule II Controlled Substance) by way of the red phosphorus/iodine method requires red phosphorus (commonly acquired by removing the red phosphorus from  matchbook striker plates), iodine crystals (commonly acquired by processing any liquid containing iodine/iodide), and pseudoephedrine/ephedrine (obtained through the processing of cold/allergy pills, tablets, gelcaps, and liquids containing pseudoephedrine or ephedrine).   Other chemicals/ingredients commonly used during the red phosphorus/iodine method include sodium hydroxide (e.g. Red Devil Lye), methyl alcohol/ethanol (e.g. Heet – fuel line antifreeze), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel), acetone, rubbing alcohol, hydrogen peroxide, muriatic acid, sulfuric acid, table salt, aluminum foil, and distilled water.  Equipment/tools commonly used during the red phosphorus/iodine method of methamphetamine manufacture include glass mason jars, plastic bottles/food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, electric hot plates/electric skillets, frying pans, razor blades, digital scales, PH test strips or electronic PH testers, funnels, and stirring utensils.

6.  Individuals who manufacture methamphetamine usually use and sell/trade the methamphetamine they manufacture.  These manufacturers routinely have other persons (hereafter referred to as "shoppers") assist them in the purchasing of precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine.  Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

7.  A review by this affiant of Michael Brady Lester's criminal history revealed his 2004 conviction for Manufacturing a Schedule II Controlled Substance (methamphetamine).  Lester subsequently received a (10) year suspended sentence and was placed on active supervision.

8.  During a 2005 non-custodial interview (while Lester was on active state supervision/probation), Lester acknowledged to this affiant that he was a red phosphorus/iodine method methamphetamine manufacturer and claimed that he had developed new methods for making methamphetamine.  Lester took this affiant to his bedroom in his parent's home and showed this affiant some of the recipes Lester had developed.   Lester advised that one of his goals was to create a floating methamphetamine lab.  Lester claimed that his addiction to cooking methamphetamine was as strong as his addiction to use methamphetamine.  Lester stated that he had thrown away a lab in a dumpster in Abingdon, VA about two weeks prior to the interview because Lester was paranoid.  Lester admitted that he had (2) women purchase iodine for him so that he could manufacture methamphetamine.

    Lester subsequently had (4) years of his previously suspended sentence (reference ¶7 above) revoked.

9.  During October 2012, a state search warrant was executed at the residence of Lester and his girlfriend (Amy Roe) in Saltville, VA.  As a result of the execution of the search warrant, methamphetamine laboratory equipment (including professional laboratory glassware) and chemicals/ingredients (Heet, muriatic acid, multiple bottles of iodine, hydrogen peroxide, PH test strips etc.) were seized along with methamphetamine residue (confirmed via laboratory analysis).  As a result of the October 2012 search warrant and related laboratory analysis, there are currently active, unexecuted arrest warrants for Lester and Roe charging them with Manufacturing a Schedule II Controlled Substance (methamphetamine), Possession of Precursors with the Intent to Manufacture Methamphetamine, and Possession of a Schedule II Controlled Substance (methamphetamine).

10. This affiant recently reviewed pseudoephedrine sales data provided by a number of retailers (as required under The Combat Methamphetamine Epidemic Act of 2005) and iodine sales data maintained by a retailer.  The data revealed the following (not all inclusive):

    • On 04-07-2013, Roe purchased a  (15) day supply of pseudoephedrine.

    • On 04-11-2013, Roe purchased a  (10) day supply of pseudoephedrine.

- On 04-14-2013, Roe attempted to purchase a (5) day supply of pseudoephedrine.

- On 04-15-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 04-19-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 04-23-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 04-25-2013, Roe attempted to purchase a (10) day supply of pseudoephedrine.

- On 04-26-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 04-27-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 04-29-2013, Roe attempted to purchase a (5) day supply of pseudoephedrine.

- On 05-02-2013, Roe attempted to purchase a (15) day supply of pseudoephedrine and then attempted to purchase a (5) day supply of pseudoephedrine.

- On 05-03-2013, Roe attempted to purchase a (10) day supply of pseudoephedrine. Approximately (5) minutes after Roe's attempted purchase, Lester purchased a (10) day supply of pseudoephedrine at the same pharmacy.

- On 05-04-2013, Roe attempted to purchase a (10) day supply of pseudoephedrine.

- On 05-07-2013, Roe purchased a (10) day supply of pseudoephedrine.

- On 05-13-2013, Roe purchased a (15) day supply of pseudoephedrine.

- On 05-19-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 05-21-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 05-25-2013, Roe purchased a (5) day supply of pseudoephedrine and purchased iodine.

- On 05-28-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 05-31-2013, Roe attempted to purchase a (5) day supply of pseudoephedrine.

- On 06-03-2013, Roe attempted to purchase a (5) day supply of pseudoephedrine.

- On 06-05-2013, Roe attempted to purchase a (10) day supply of pseudoephedrine.  (23) minutes after Roe's attempted purchase, Lester purchased a (10) day supply of pseudoephedrine at the same pharmacy.

- On 06-06-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 06-09-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 06-15-2013, Roe purchased a (10) day supply of pseudoephedrine.

- On 06-18-2013, Lester purchased a (10) day supply of pseudoephedrine. Roe purchased iodine on this same date.

- On 06-22-2013, Roe purchased iodine and attempted to purchase a (10) day supply of pseudoephedrine.  Within an hour of Roe's attempted purchase, Lester purchased a (10) day supply of pseudoephedrine at the same pharmacy.

- On 06-25-2013, Roe purchased a (10) day supply of pseudoephedrine.

- On 06-27-2013, Roe attempted to purchase a (10) day supply of pseudoephedrine.

- On 06-28-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 07-02-2013, Lester attempted to purchase a (10) day supply of pseudoephedrine.

- On 07-03-2013, Lester attempted to purchase a (15) day supply of pseudoephedrine.  Lester then purchased a (5) day supply of pseudoephedrine.

- On 07-07-2013, Roe purchased iodine.

- On 07-10-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 07-16-2013, Lester purchased a (5) day supply of pseudoephedrine.  Roe purchased iodine on this same date.

- On 07-17-2013, Lester attempted to purchase a (10) day supply of pseudoephedrine.  Lester then attempted to purchased a (5) day supply of pseudoephedrine.

- On 07-19-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 07-31-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 08-05-2013, Lester attempted to purchase a (10) day supply of pseudoephedrine.

- On 08-15-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 08-19-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 08-21-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 08-25-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 08-27-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 08-28-2013, Roe purchased iodine.

- On 08-30-2013, Lester purchased a (10) day supply of pseudoephedrine.

- On 09-03-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 09-07-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 09-09-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 09-14-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 09-16-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 09-19-2013, Lester purchased a (5) day supply of pseudoephedrine.

- On 09-20-2013, Roe purchased a (5) day supply of pseudoephedrine.

- On 09-23-2013, Lester attempted to purchase a (10) day supply of pseudoephedrine.  Approximately (5) minutes after Lester's attempted purchase, Roe purchased a (10) day supply of pseudoephedrine at the same pharmacy.

11. Pseudoephedrine and iodine are key ingredients to the manufacturing of methamphetamine via the red phosphorus/iodine method.  During the last several years, this affiant has routinely found and seized (via search warrants and consent searches) the aforementioned ingredients (and packaging of same) at methamphetamine manufacturing/precursor preparation sites. This affiant has encountered and seized said ingredients at such sites in various forms/stages (e.g. crystals, powders, sludges/mixed with liquids) related to methamphetamine production and contained in a variety of glass and plastic containers days, weeks, and even months after the ingredients were purchased at pharmacies/retail stores.

12. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who illegally manufacture methamphetamine and/or conspire to do so typically maintain methamphetamine manufacturing precursors/chemicals/equipment (as described in paragraph #5 above) along with receipts / notes / records / telephone numbers (as they pertain to manufacturing/conspiracy to manufacture), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this

affidavit is attached) on their persons, inside their residences, garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at the manufacturer's/conspirator's residence/property.

13. Individuals who manufacture methamphetamine and/or conspire to do so routinely have persons who are methamphetamine users and/or additional co-conspirators (i.e. shoppers) present at their residences/properties. These users/co-conspirators often illegally possess methamphetamine and methamphetamine use paraphernalia and routinely possess notes, stored telephone numbers, and messages pertaining to their relationships with methamphetamine manufacturers / manufacturing co-conspirators. These users/co-conspirators are oftentimes in possession of other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) and possess these items on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at the drug manufacturer's/co-conspirator's residences/properties.

14. The clandestine manufacturing of methamphetamine is an extremely dangerous process that involves the use of toxic, flammable, explosive, and incompatible chemicals. Explosions, fires, and toxic gasses generally pose the greatest threats to law enforcement officers executing search warrants at methamphetamine manufacturing sites. It is not uncommon for methamphetamine manufacturers to panic when they become aware of a law enforcement presence at a methamphetamine manufacturing site. As a result of their panic, methamphetamine manufacturers have been known to attempt to dispose of evidence of their manufacturing by throwing/pouring chemicals into toilets, bathtubs, and sinks before law enforcement can gain entry and secure the premises. The pouring/mixing of the various chemicals during the attempted disposal creates an increased risk of explosion, fire, and toxic gas exposure due to the nature of the chemicals involved. This affiant believes that the above presents reasonable suspicion that knocking and announcing the presence of law enforcement officers at the time of the execution of this search warrant would prove dangerous to the law enforcement officers involved in the execution of the search warrant.

15. Michael Lester's and Amy Roe's known residence is located at 219 Frye Town Lane, Saltville, VA (located within the Western District of Virginia).

16. Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the premises known as 219 Frye Town Lane, Saltville, VA as there is probable cause to believe that there is evidence of a violation of 21 USC 841(a)(1) and 846/841(a)(1) at said premises.

_____          9-26-2013
Brian Snedeker, Special Agent (DEA)              Date

Subscribed and sworn to before me, this the _26th_ day of _September, 2013_.
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia